Ervin D. MYRICK, Petitioner,

v.

DEPARTMENT OF THE ARMY, Respondent.

No. 01–3028.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 10, 2001.

Before MICHEL and RADER, Circuit Judges, FRIEDMAN, Senior Circuit Judge.

PER CURIAM.

Ervin D. Myrick petitions for review of the Final Decision of the Merit Systems Protection Board ("Board"), *Myrick v. Dep't of the Army*, Docket No. DC–0432–99–0569–I–2, affirming his removal for unacceptable performance. 87 M.S.P.R. 531 (2000) (Table). Because the Board did not act arbitrarily, capriciously, or contrary to law, and because its decision is supported by substantial evidence, we *affirm*.

## Background

Petitioner was employed as a Supervisory Information Systems Management Specialist, GS–12, at the U.S. Army Medical Department Activity ("MEDDAC") at Fort Eustis, Virginia. According to his job description, his major duties included serving as Chief of the Information Management Branch for MEDDAC, where he was responsible for providing staff and technical advice, supervising program and contractor management, and applying administrative and technical skill to integrate the functions of the information systems program.

On January 7, 1999, petitioner's supervisor, Major Shields, sent him a memorandum entitled Notice of Unacceptable Performance and Performance Improvement Plan. The Notice outlined petitioner's performance deficiencies and specifically identified the circumstances supporting each such determination. These included: failure to keep command informed on key issues affecting the organization; failure to provide leadership for the personnel within the branch or to delegate responsibilities and follow up on key issues; failure to follow through on all strategic goals identified in the last IM/IT offsite; and failure to prepare so-called "year-end UFRs" for automation.

Petitioner was thereafter placed in a Performance Improvement Plan ("PIP"), essentially a 60–day probationary period, designed "to provide him the opportunity to bring [his] performance to the success level or higher" in the areas in which he was found to be deficient. Based upon his deficiencies, the PIP outlined four "objectives" upon which he needed to improve. The 60–day period ran from January 12 through March 12, 1999.

On April 5, 1999, Maj. Shields sent petitioner a memorandum proposing to remove him for unacceptable performance. The memorandum recounted the circumstances leading to imposition of the PIP and described in detail at least two objectives of the PIP in which petitioner failed to improve. On April 23, 1999, petitioner

responded through counsel, objecting to the proposed removal. Finding the Notice of Proposed Removal fully supported, the Deputy Commander for Administration at MEDDAC, Lieutenant Colonel Rosalyn Jordan, removed petitioner on April 30, 1999.

Before the Board, petitioner argued that the performance standards in the PIP were arbitrary and had not been communicated to him. Respondent introduced evidence that the standards were clear, that petitioner never expressed any such concern during his weekly counseling sessions with Maj. Shields over the PIP period, and that he failed to improve in at least two areas during the period. The administrative judge, crediting the testimony of Maj. Shields and Lt. Col. Jordan, affirmed the removal. The Board denied a petition for review on September 26, 2000. The present petition for review followed.

## Discussion

This court reviews decisions of the Board narrowly. We may set aside an agency ruling only upon the finding that it was: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c)(West 2001). This scope of review is not, however, limited to ultimate findings and conclusions: the Board's credibility determinations are "virtually unreviewable." *Briley v. Nat'l Archives & Records Admin.*, 236 F.3d 1373, 1377 (Fed.Cir.2001) (citing *Rogers v. Dep't of Defense Dependents Sch.*, 814 F.2d 1549, 1554 (Fed.Cir.1987)).

Petitioner makes two primary assertions before us. First, he contends that the Board's ruling was arbitrary and capricious because the PIP failed to clearly outline the performance enhancements necessary to achieve an acceptable rating.

Second, he contends that the finding that his performance was unsatisfactory was not supported by substantial evidence. Neither argument is persuasive.

■ The performance standards for Senior System Civilian Positions are outlined in DA Form 7222–1. They require petitioner to demonstrate at the success level: Technical Competence; Innovation/Initiative; Responsibility/Accountability; Working Relationships; Communication; Organizational Management and Leadership; and Equal Opportunity/Affirmative Action. These standards, of which petitioner was well aware, are part of the Department of the Army's performance management plan for civilian employees, the Total Army Performance Evaluation System ("TAPES"). These performance standards have been approved by the Office of Personnel Management, a necessary prerequisite to bringing a performance-based personnel action under 5 U.S.C. § 4303. *See Diprizio v. Dep't of Transportation*, 88 M.S.P.R. 73 (2001).

Thus, although petitioner asserts that the standards outlined in the PIP were vague, the PIP in fact identified four "objectives", the achievement of which was necessary to bring petitioner in conformity with the TAPES standards to which he knew he was subject. A mere glance at Maj. Shields' memorandum instituting the PIP makes this clear. Petitioner was told that he had "failed to meet the performance standard—Senior System Civilian Positions of Organizational Management and Leadership." He was further alerted that the purpose of the PIP was to help him "bring [his] performance to the Success level or higher for the four major objectives [he had] failed" and that Maj. Shields "had reviewed [his] *DA Form 7222–1* ... to determine what adjustments are necessary to reflect performance at the success levels during the opportunity to improve period." (emphasis added).

Cognizant of these standards, the Board had before it record evidence that petitioner failed to accomplish at least two of the four objectives identified in the PIP. It also had record evidence, including petitioner's own admission, that many tasks assigned to him in the PIP for completion during the 60–day improvement period went unfinished. Although petitioner argues at length in his brief that the circumstances surrounding many of those failures were out of his control, he had the opportunity below to prove such circumstances but failed to do so. In any event, it is not our task to review the evidence anew. If substantial evidence supports the Board's determination, our inquiry must end.

The record here is replete with evidence that petitioner failed to meet the standards that were expected of one in his position. In addition, the standards were clear enough, as were the objectives. Thus, we cannot say that the Board's decision was arbitrary, capricious, contrary to law or rule, or unsupported by substantial evidence. Accordingly, its decision that petitioner's removal was justified is affirmed.